Etan Zaitsu [SBN 287106]
Attorney-at-Law

Zaitsu Law
331 J Street, Suite 200
Sacramento, CA 95814
916.542.0270

Attorney for Defendant
JOSHUA MARKANSON

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　　Plaintiff,<br><br>　v.<br><br>JOSHUA MARKANSON,<br><br>　　　　　　　Defendant. | Case No.: 2:18-CR-00024<br><br>**DEFENDANT'S REPLY TO GOVERNMENT'S OPPOSITION REGARDING DISCOVERY PRODUCTION** |

**REPLY**

**I. Government's assertions about the legal standard in the Ninth Circuit governing Rule 16 is misleading**

　　a. <u>In its reliance on *Armstrong* and *Chon*, the government failed to mention the Ninth Circuit's interpretation and clarification in *Soto-Zuminga* about those cases</u>

The government misleads the Court by citing *United States. v. Armstrong,* 517 U.S. 456, 462 (1996) and *United States v. Chon* 210 F.3d 990, 992 (9th Cir. 2000) for the proposition that under Rule 16, "defendants are entitled to discover only those materials that are relevant to the defendants' *response to the government's case-in-chief*." (Emphasis added.) The misleading standard is the basis for its opposition to disclosing the Ryckman material,

ATF evidence collection, handling, storage of evidence information and related procedures, and firearm examination and tests. Govt. Opp at 2-5.

The Ninth Circuit in *Soto-Zuniga* specifically held that *Armstrong* only "applies to the narrow issue of discovery in selective-prosecution cases." *United States v. Soto-Zuniga*, 837 F.3d 992, 1000–01 (9th Cir. 2016) (citing Justice Ginsburg concurrence clarifying the court's narrow decision). It further held that its *Chon* decision did not adopt the government's "case-in-chief" standard, but rather turned on the overly broad nature of the discovery request, which did not serve to "fortify" the defendant's defense. *Id.*

Furthermore, the government's "case-in-chief" standard runs counter to the low threshold for materiality in the pretrial discovery request context, "because it is just too difficult to analyze before trial whether particular evidence ultimately will prove to be 'material' after trial." *United States v. Olsen*, 704 F.3d 1172, 1183 (9th Cir. 2013), citing *United States v. Agurs*, 427 U.S. 97, 108 (1976) ("there is a significant practical difference between the pretrial decision of the prosecutor and the post-trial decision of the judge"). The nature and direction of the government's case-in-chief may change depending on the admissibility of its evidence, new evidence, and the availability or refusal of witnesses to testify. Thus, "[a] trial prosecutor's speculative prediction about the likely materiality of favorable evidence [ ] should not limit the disclosure of such evidence." *Id.*

The Ninth Circuit has provided further guidance to trial prosecutors who must regularly decide what material to turn over, "not[ing] favorably the thoughtful analysis set forth by two district courts in this circuit:

> [T]he 'materiality' standard usually associated with *Brady* ... should not be applied to pretrial discovery of exculpatory materials.... [J]ust because a prosecutor's failure to disclose evidence does not violate a defendant's due process rights does not mean that the failure to disclose is proper.... [T]he absence of prejudice to the defendant does not condone the prosecutor's suppression of exculpatory evidence [ex ante ].... [Rather,] the proper test for pretrial disclosure of exculpatory evidence should be an evaluation of whether the evidence is favorable to the defense, i.e., whether it is evidence that helps bolster the defense case or impeach the prosecutor's witnesses.... [I]f doubt exists, it should be resolved in favor of the defendant and full disclosure

2

**Defendant's Reply Re Motion to Compel Discovery**

> made.... [T]he government [should therefore] disclose all evidence relating to guilt or punishment which might reasonably be considered favorable to the defendant's case, even if the evidence is not admissible so long as it is reasonably likely to lead to admissible evidence.
>
> *United States v. Acosta*, 357 F.Supp.2d 1228, 1239-40 (D.Nev.2005) (emphasis added) (citing *United States v. Sudikoff*, 36 F.Supp.2d 1196 (C.D.Cal.1999)).

*United States v. Price*, 566 F.3d 900, 913 (9th Cir. 2009).

Thus, the government's reliance on *Armstrong* and *Chon* in order to skirt its discovery obligations and without regard or citation to the *Soto-Zuniga* clarification, is not only contrary to the law of the Circuit, it is also a misrepresentation that runs afoul of its obligation to cite directly controlling unfavorable precedent.

    b. <u>The government's description of a defendant's burden to make a *prima facie* showing of materiality requires further explanation</u>

As cited by the government, the Ninth Circuit in its 1990 case *United States v. Mandel*, 914 F.2d 1215 stated that "[n]either a general description of the information sought nor conclusory allegations of materiality suffice; a defendant must present facts which would tend to show that the Government is in possession of information helpful to the defense." 914 F.2d 1215, 1219 (9th Cir. 1990). In 2010, however, the Ninth Circuit clarified that a defendant "need not spell out his theory of the case… [n]or is the government entitled to know in advance specifically what the defense is going to be." *United States v. Stever*, 603 F.3d 747, 752 (9th Cir. 2010). Whatever the line is between general descriptions and conclusory allegations versus divulging theories of the case and specific defenses, the defense has met its burden.

**II. The Ryckman material is discoverable**

The government's claim that the defense has not established a sufficient nexus between impeachment and the Ryckman information misconstrues the discovery standard. First, the government's discovery obligations are not limited to producing impeachment evidence. They also include producing evidence that may lead to admissible evidence, aids witness preparation, corroborates testimony, and bolsters or fortifies a defendant's defense. *United*

3

**Defendant's Reply Re Motion to Compel Discovery**

*States v. Hernandez Meza*, 720 F.3d 760, 768 (9th Cir. 2013); *Soto-Zuniga*, 837 F.3d 1000–01. Upon a showing of materiality, it also includes, as relevant here, evidence that causes doubt about the quality of the investigation and the reliability of evidence. *United States v. Sager*, 227 F.3d 1138, 1145–46 (9th Cir. 2000) (holding that the district erred in curtailing defendant's defense attacking the quality and flaws of the investigation). In *Kyles v. Whitley*, the Supreme Court specifically discussed the utility of attacking police investigations as "shoddy" or the "thoroughness and even the good faith of the investigation, as well," holding that "[w]hen the probative force of evidence depends on the circumstances in which it was obtained and those circumstances raise a possibility of fraud, indications of conscientious police work will enhance probative force and *slovenly work will diminish it*." *Id.* at 446 n. *Kyles v. Whitley*, 514 U.S. 419 (1995) (emphasis added), citing *Bowen v. Maynard*, 799 F.2d 593, 613 (CA10 1986) ("A common trial tactic of defense lawyers is to discredit the caliber of the investigation or the decision to charge the defendant, and we may consider such use in assessing a possible Brady violation"); *Lindsey v. King*, 769 F.2d 1034, 1042 (CA5 1985) (awarding new trial of prisoner convicted in Louisiana state court because withheld Brady evidence "carried within it the potential ... for the ... discrediting ... of the police methods employed in assembling the case"); *see also Carriger v. Stewart*, 132 F.3d 463, 481 (9th Cir. 1997) (affirming defense attacking quality of the investigation); *Olsen*, *supra*, 704 F.3d at 1181 (9th Cir. 2013) (affirming defense theory of sloppiness and haste in lab causing contamination of the evidence); *Gallego v. United States*, 276 F.2d 914, 917 (9th Cir. 1960) (where the admissibility of physical evidence is at issue, courts must consider "the nature of the article, the circumstances surrounding the preservation and custody of it, and the likelihood of intermeddlers tampering with it").

      Here, the defense has already articulated why the Ryckman material is helpful and material to preparing the defense. To repeat, Ryckman, a substantially involved case agent, who also served as an ATF evidence custodian, is an admitted criminal, who stole money from crime scenes and taxpayers, falsified evidence, and illegally used informants to further his objectives. His involvement in this case thus taints any evidence he collected, handled, transported, stored, had access to, or had the opportunity to tamper with, while casting doubt

4

**Defendant's Reply Re Motion to Compel Discovery**

about the credibility and reliability over the evidence in this case and the investigation as a whole. Such evidence is thus material and exculpatory—and responsive to the government's case-in-chief regardless—because it tends to show that Markanson did not commit the crime of which he is accused.

It must also be noted that the government seems to have partially understood its obligation under both Rule 16 and *Brady* when it drafted and sent its disclosure letter explaining Ryckman's corruption and his relationship to the confidential informant used in this case. Dkt. 196, Exhibit A, Govt's Ryckman Corruption Disclosure Ltr. It further allowed defense counsel a limited view-only review of the FBI's investigation report summarizing some of Ryckman's admissions. The government knew then as it does now the significance, materiality, and exculpatory nature of the Ryckman revelation, which casts doubt about the credibility of the evidence and the investigation, and Markanson's involvement in the conspiracy. The character of this information is of such legal importance that the government has even asserted that it will not rely on evidence directly dependent on the work of Ryckman or his informant.

But the limited disclosure by the government's is problematic on several grounds. First, its disclosure seeks to control the nature and framing of the information that exists by producing only government drafted synopsis of the information. Allowing the government to have unfettered control of such critical information is contrary to Rule 16 and *Brady* principles. Indeed, this circumstance is precisely why the Ninth Circuit in *United States v. Budziak* held that "criminal defendants should not have to rely solely on the government's word that further discovery is unnecessary." *United States v. Budziak,* 697 F.3d 1105, 1112–13 (9th Cir. 2012). As was especially so there, "where a charge against the defendant [was] predicated largely on computer software functioning in the manner described by the government, and the government [was] the only party with access to that software," the evidence here is predicated on information only the government has described, and to which it and only it has access to. Such other material information it is choosing not to disclose, however, includes, according to news accounts and other attorneys involved in matters relating to Ryckman, audio recordings

**Defendant's Reply Re Motion to Compel Discovery**

and transcripts of Ryckman's confessions, payments to his informants, witness statements and allegations of Ryckman's other criminal acts, discovery in other federal cases dismissed on account of Ryckman's participation and/or corrupt practices—all of which sheds light on the extent of Ryckman's modus operandi, including falsifying evidence, planting evidence such as firearms, wiping off fingerprints, and stealing hundreds of thousands of dollars from suspects he investigated.

Second, the government's disclosure cannot be trusted. Specifically, its letter asserts that all six controlled purchases "were planned and carried out by other federal undercover agents and witnesses," that law enforcement "observed each of the defendants committing the offenses" charged in the indictments, and that Ryckman only "participated in a limited role (i.e., surveillance)." Govt's Ryckman Disclosure. Each of these assertions in turn can be easily dispelled upon review of the reports and evidence produced thus far. For instance, the six controlled purchases were not all strictly conducted by federal agents and witnesses. As is clear from the attached portions of ATF's report, the alleged November 27, 2017 transaction was carried out entirely by Ryckman's informant and the other codefendants, with preparation and surveillance support from Ryckman, Agent Oliver, and Agent Donn. Exhibit C, ATF Report. The surveillance agents even admit their view of the transaction was obscured, and thus relied solely on the recorded video and informant statements to draft their report. ATF Report. The recorded video evidence, however, does not show the exchanging of firearms or money.[1]

Even more troubling is the way the evidence was collected, transported, and stored. During the alleged November 27 transaction, for instance, the report claims that Agent Donn took possession of the firearms and "secured them at the ATF Sacramento I Field Office." ATF Report.  Agent Oliver then reportedly "booked all items as evidence at the ATF Sacramento I Field Office." ATF Report.  Yet, it is Ryckman's name that appears on many of the evidence tags stored at the ATF Sacramento Filed I Office. Exhibit D, Evidence Tag Photo. Moreover, according to the evidence tag, the evidence was booked into ATF's locker on November 30,

---

[1] Video recording available upon request.

6

**Defendant's Reply Re Motion to Compel Discovery**

*three days after the transaction*. Clearly, then, Ryckman was involved to a much larger degree than the government has represented.

The government's final claim that agents witnessed all defendants commit the crime they are charged with is also patently false, because, in fact, not a single report contains an allegation that agents witnessed defendant Joshua Markanson commit the crime of which he is accused.

Finally, a recent scathing 500+ page internal investigation report concerning the Baltimore Gun Trace Task Force (GTTF) corruption scandal, "the most extensive and damaging corruption scandal in the history of [the Baltimore Police Department]," was recently published, which sheds more light on the specific type of crimes Ryckman and his "criminal gang" committed during their crime spree. Exhibit E, GTTF Report at 510. Ryckman, of course, is named in the report as a part of ringleader Sgt. Wayne Jenkins' "squad."  GTTF Report at 306, 326.

Ryckman's membership in Jenkins' gang is troubling for numerous reasons.  "Over the course of Jenkins's career, he committed at least 10 armed robberies, which began as early as 2011, conducted at least three burglaries, and stole drugs on a frequent basis. Through his illicit drug sales, Jenkins netted almost a quarter of a million dollars." GTTF Report at 313. Moreover, he and his squad regularly falsified evidence, planted drugs and guns, and colluded with informants.  GTTF Report at xx, xxiii, 95, 111, 114, 153, 176-77, 264, 308, 310, B34.

> One of the most common types of corruption "was making misrepresentations of fact to support an arrest, search, or other law enforcement action. This practice was designed to mask the identity of informants, shield supervisors from needing to testify in court, and/or provide the additional information necessary to justify the actions of BPD officers. To achieve one or more of these purposes, the BPD officer would falsely represent that an observation or set of observations had been made directly by the officer rather than by the supervisor or informant. In other cases, the BPD officer would fabricate the observation entirely. And the falsehood would then be perpetuated through perjured testimony; as one officer succinctly put it: "There was an unwritten rule—whatever you wrote is what happened."

GTTF Report at 466.

7

**Defendant's Reply Re Motion to Compel Discovery**

Jenkins was also always "prepared to plant evidence if that proved necessary and that he needed other BPD members with whom he worked to be prepared to do so as well. He imparted this guidance to BPD members who served under him from the time he became a supervisor in 2012 until his arrest in March 2017." GTTF Report at 114. Jenkins admitted that he "surround[ed] himself with other BPD members who were willing to place personal loyalty to him above their oaths as law enforcement officers." GTTF Report at xvi.

Jenkins and Ryckman also engaged in a large-scale overtime-pay scheme to defraud the government. GTTF Report at 308 (quoting AUSA Leo Wise at Jenkins' sentencing who said the overtime fraud was a numbers game in which Jenkins "stopped people without cause in order to recover firearms that he could then use to justify his false overtime claims"). The taxpayer funded fraud included an incentive-based system that rewarded officers with "overtime in exchange for gun confiscation [in which] officers could receive four to eight hours of overtime for each gun they seized." GTTF Report at 310.

> Corrosive incentive structures were created that were inextricably linked to the pressure to produce. BPD members and command staff were judged to a large extent based on the number of arrests and gun seizures they achieved rather than on whether those arrests and seizures led to successful prosecutions… [T]hese incentive structures produced unjustified stops and frisks, unlawful arrests, and gun seizures that did not result in successful prosecutions.

GTTF Report at ix-x.

In sum, the government's vague assertions that the defense is not entitled to the Ryckman material lacks merit.

### III. The government similarly errs in its opposition to produce ATF evidence collection, handling, transport, and storage information and procedure evidence

Defendant's request is no fishing expedition, as the government calls it. It is very specific, relating directly to the fact that Ryckman was substantially involved as a case agent, who handled, transported and stored evidence in this case, and had full unfettered access to the evidence as an evidence custodian. His confession to stealing, falsifying evidence, using informant's illegally, and many other crimes as a Baltimore police officer, along with the OIG

8

**Defendant's Reply Re Motion to Compel Discovery**

Audit which details the specific ways in which ATF's storage procedures exposes evidence to tampering, is precisely why the requested material must be produced. The request for ATF collection, handling, transport, and storage information, including procedures, practices, guidelines, and chain of custody information is thus material to innocence or guilt, and developing the defense, because evidence of tampering by Ryckman negates the accusations made against Markanson. The evidence, thus, goes to one of Markanson's defenses: whether Ryckman colluded with his informant or others, or otherwise tampered with or planted evidence pointing to Markanson as a firearm manufacturer. Defendant is entitled to present such a defense, and is thus entitled to the discovery it seeks in this regard.

### IV. The government's objection to the firearm examination and tests requests is itself vague and contrary to law

The government's objection to this request is both curious and erroneous. Rule 16(a)(1)(F) specifically states that reports of examinations and tests must be turned over to the defense if they are material to preparing the defense. The charges in this firearm case naturally require the government to prove, beyond a reasonable doubt, numerous elements. Defense counsel should not have to spell out its defense theory, nor is it required to, to obtain reports from tests or exams performed on the firearms.

Moreover, any such testing of the firearms should be provided far in advance of trial to ensure the defense has ample time to review the reports and determine whether to engage its own experts for testing or testifying. *U.S. v. Willock*, 696 F. Supp. 2d 536 (D. Md. 2010).

### V. The government has repeatedly ignored the defense's numerous requests for information about the seized and pre-marked funds

It is troubling in the first place that the government, as it claims, would pre mark money used in its undercover transactions but not have records of such use or activity. The government has either impermissibly destroyed such records, grossly mishandled and lost such evidence, or it is egregiously misusing taxpayer money to pre mark bills without documenting such activity. The materiality of such records is of course material to the defendant's defense

**Defendant's Reply Re Motion to Compel Discovery**

because it can show whether or not money was transferred among the defendants in support or contrary to the conspiracy allegation.

As to the issue of seized money, undersigned has requested that the government produce records of the funds seized in this case, and/or allow the defense to view such evidence. The government has consistently ignored this request.[2] Even as of this writing, the government has not in reached out in response to the many emails and requests to produce such records, or to set up a time for viewing the evidence.

### VI. Evidence view of codefendant Wray's place

Again, the government has repeatedly ignored the defense's request to view the evidence seized from codefendant Wray's residence.

### VII. Some cell phone data was produced after the filing of this motion

It is unclear why the government responded to this and other requests only upon the filing of a motion, especially when the discoverability of the much of the evidence is obvious, numerous requests have been made over the years, and the case has dragged for nearly four years.

In any event, the government produced some cell phone data, including a never-before-seen but obviously important warrant, after this motion was filed. Undersigned is still reviewing the material to determine if it satisfies the request.

Dated:  February 11, 2022                    Respectfully submitted,

/s/ Etan Zaitsu
ETAN ZAITSU
Attorney for Defendant
JOSHUA MARKANSON

---

[2] Three separate discovery request letters and numerous emails since 2018 documenting the defense's requests are available upon request.

**Defendant's Reply Re Motion to Compel Discovery**