```
 1                IN THE UNITED STATES DISTRICT COURT
                     EASTERN DISTRICT OF CALIFORNIA
 2                BEFORE THE HONORABLE TROY L. NUNLEY

 3   UNITED STATES OF AMERICA,

 4                  Plaintiff,
     vs.                                Sacramento, California
 5                                       No. 2:18-CR-00024-TLN
                                         September 16, 2021
 6   RAYSHAWN WRAY,                      11:10 a.m.

 7                  Defendant.
     _____/
 8

 9                            --oOo--

10              REPORTER'S TRANSCRIPT OF PROCEEDINGS

11                RE: JUDGMENT AND SENTENCING

12                            --oOo--

13   APPEARANCES:

14   For THE PLAINTIFF:

15                              United States Attorney
                                By:  Aaron D. Pennekamp
16                              Assistant U.S. Attorney
                                501 I Street, Suite 10-100
17                              Sacramento, Ca  95814

18   For THE DEFENDANT:         Law Office of Todd D. Leras
                                By:  Todd D. Leras
19                              455 Capitol Mall Ste 802,
                                Sacramento, CA 95814-4433
20
     Official Reporter:         Tiphanne G. Crowe
21                              CSR No. 10958
                                501 I Street
22                              Sacramento, CA  95814
                                Tcrowe.csr@gmail.com
23
     Proceedings recorded by mechanical stenography.  Transcript
24   produced by computer-aided transcription.

25
```

1   SACRAMENTO, CALIFORNIA, THURSDAY, SEPTEMBER 16, 2021, 11:10 AM

2                              --oOo--

3          THE CLERK:  Calling Case No. 6, 18-CR-24, United

4   States versus Rayshawn Wray on for judgment and sentencing,

5   your Honor.

6          THE COURT:  Oh, state your appearances, my

7   apologies.

8          MR. PENNEKAMP:  Aaron Pennekamp appearing for the

9   United States.

10         MR. LERAS:  Good morning, your Honor.  Todd Leras

11  appearing with Rayshawn Wray who is present and in custody.

12         THE COURT:  Great, thank you.  All right.

13         Good morning, sir.

14         THE DEFENDANT:  Good morning, sir.

15         THE COURT:  All right.  Great.  This is the time and

16  place set for the pronouncement of judgment and sentence.

17         On October 11th, 2019 the defendant appeared before

18  this Court and pled guilty to one count of a nine-count

19  indictment.

20         Count 1 charged conspiracy to deal firearms on a

21  license, in violation of 18 U.S.C. Sections 371 and 922a

22  (1)(A).  The matter was referred to the probation officer for

23  preparation of the presentence evaluation and report.

24         The Court has read and considered the presentence

25  report dated October 13th, 2021.

1          Mr. Leras, have you received and read a copy of the

2   presentence report, and have you had an opportunity to go over

3   it with your client in detail?

4          MR. LERAS:  Yes, your Honor.

5          THE COURT:  All right.  Thank you.

6          Mr. Wray, sir, have you received and read a copy of

7   the presentence report?

8          THE DEFENDANT:  Yes, your Honor.

9          THE COURT:  Sir, have you had an opportunity to go

10   over it with your attorney in detail?

11          THE DEFENDANT:  I have.

12          THE COURT:  All right.  Thank you.

13          As a preliminary matter, defense counsel filed a

14   document titled Request for Correction to Presentence

15   Investigation Report in which the defendant requests the

16   probation officer include a three-level reduction for

17   acceptance of responsibility in the United States Sentencing

18   Guidelines Sections 3E1.1 sub A through B.

19          Based on delays in sentencing, and the defendant's

20   timely guilty plea and participation in the probation interview

21   process, the probation officer declined to include the

22   reduction in the final presentence report because the defendant

23   was arrested for a driving-under-the-influence charge while on

24   pretrial release, and, therefore, did not voluntarily terminate

25   or withdraw from criminal conduct.

1          For its part, the government did file a notice of

2   non-opposition in which the government requests -- also

3   requested the Court to apply the three-level reductions for

4   acceptance of responsibility pursuant to the government's

5   obligations under the terms of the plea agreement.

6          Mr. Leras, is that an accurate summary of your

7   objection?

8          MR. LERAS:  It's an accurate summary of the objection,

9   your Honor.  I'll also indicate that Mr. Lee, who was the

10  assigned prosecutor, had indicated to me before filing the

11  document that that was going to be his position.

12         THE COURT:  Okay.  That's not Mr. Lee.  That's Mr.

13  Pennekamp.

14         MR. LERAS:  I understand.  Mr. Lee took this case

15  over, and he said I'm not going to be able to be here.

16         Since Mr. Pennekamp is graciously standing in, I just

17  wanted to clarify that that's what had happened, is that a

18  formal correction wasn't filed because Mr. Lee had indicated he

19  would file something on the docket about the government's

20  position, and he did.

21         THE COURT:  All right.  Anything further, Mr.

22  Pennekamp?

23         MR. PENNEKAMP:  Not from the government, your Honor,

24  no.

25         THE COURT:  All right.  You know, the commentary for

1    United States Sentencing Guidelines Section 31.1(A) -- 3 1.1

2    does set forth an illustrative list of considerations to use in

3    determining whether defendant qualifies for a reduction under

4    subsection A.

5         The probation officer did focus on only one of these

6    considerations which is voluntary termination or withdrawl from

7    criminal conduct for associations.

8         However, Application Note 3 states that:  Entry of a

9    plea of guilty prior to the commencement of trial, combined

10   with truthfully admitting the conduct comprising the offense of

11   conviction, and truthfully admitted or not falsely denying any

12   additional relevant conduct for which he is accountable, will

13   constitute a significant evidence of acceptance of

14   responsibility.

15        It's undisputed that the defendant timely pled guilty

16   and truthfully admitted his offense conduct and relevant

17   conduct.

18        While it's clear that defendant has struggled with his

19   mental health, it's also clear defendant has struggled with his

20   addictions.  The Court does not believe that defendant's DUI

21   arrest is inconsistent with defendant's otherwise satisfactory

22   efforts to accept responsibility for his conviction for

23   conspiracy to deal firearms on a license.

24        Therefore, the Court will apply the three-level

25   reductions.

1    At this time are there any other objections to any of

2    the statements of material fact, sentencing classifications,

3    sentencing guidelines, sentence guideline ranges and/or policy

4    statements filed that this Court is not aware of, Mr.

5    Pennekamp?

6         MR. PENNEKAMP:  No, your Honor.

7         MR. LERAS:  None, your Honor.

8         THE COURT:  Thank you.  There being no objections to

9    the findings in the presentence report, the Court adopts those

10   findings and determines those findings to be true and correct.

11        The Court does find an Advisory Offense level of 13.

12   This includes a base offense level of 12 pursuant to United

13   States Sentencing Guidelines Section 2K2.1 and 2K2.1 (A)(7), as

14   those are the guideline sections for 18 U.S.C. Sections 371 and

15   922 (A), offenses.

16        A four-level increase pursuant to United States

17   Sentencing Guidelines Section 2K2.1 (b)(1)(B), as the defendant

18   was involved in an illegal sale of 11 firearms.  In a

19   three-level reduction for acceptance of responsibility pursuant

20   to United States Sentencing Guidelines Section 3E1.1 sub A

21   through B.

22        The defendant's Criminal History Category is a 3.

23   Accordingly, the guideline range is 18 to 24 months of

24   imprisonment.

25        Is there any reason judgment and sentence should not

1    be proceeding at this time?

2              MR. PENNEKAMP:  No, your Honor.

3              MR. LERAS:  None.

4              THE COURT:  All right.  Thank you.

5              Defendant did file a sentencing memorandum with the

6    Court in which the defendant requested the Court impose a

7    sentence of 18 months and a two-year term of supervised

8    release.

9              And I know probation has already indicated that the

10   defendant has already served 23 months, and in support, the

11   defendant argues that his role in the offense was that of a

12   delivery person or middleman.  He also argues that he did not

13   participate in the manufacture of the guns or negotiation of

14   any deals.

15             Defendant -- excuse me -- describes some difficult

16   points in his life.  For example, defendant's father was

17   emotionally and physically abusive and served time in jail.

18             Defendant's mother was addicted to drugs and suffered

19   from drug addiction.  Defendant states he was shuffled between

20   his parents and the foster care system during his childhood.

21             Defendant also describes how he developed PTSD, in

22   part because of his military service and combat experience.

23   Defendant struggles with alcohol and marijuana use and

24   indicates that he needs mental health treatment and substance

25   abuse counseling.

1    Defendant indicates that he loves his son and wants to

2    be involved in his son's life.

3    Mr. Leras, did I accurately summarize the defendant's

4    arguments.

5    MR. LERAS:  It does, your Honor.

6    THE COURT:  All right.  Does the government wish to be

7    heard?

8    MR. PENNEKAMP:  Your Honor, just to state that we

9    stand by our recommendation in the plea agreement.  That we

10   recommend a low-end sentence.

11   THE COURT:  All right.  Anything further?  I'll allow

12   him to allocute in a moment.  Just let me say in determining

13   the sentence, the Court looks at the United States Supreme

14   Court case of the United States versus Booker, as well as the

15   Advisory Sentencing Guidelines.

16   The Court notes that the guidelines are not mandatory,

17   but advisory and a starting point.  The Court also looks at the

18   statutory provisions of 18 U.S.C. Section 3553(a) to determine

19   a sentence sufficient, but not greater than necessary to comply

20   with the purposes of sentencing.

21   The Court has reviewed this case in detail, the

22   filings in this case, the defendant's criminal history, his

23   level of involvement in this case.

24   Before I proceed to pronounce judgment and sentence,

25   Mr. Leras, does your client wish to allocute?

1          MR. LERAS:  He does not, your Honor.  On his behalf,

2     though, I will indicate this:  That the request really here is

3     for a time-served sentence.  Under the circumstances he's time

4     served.  So I'll say that because the government can't.  It's

5     obligated to recommend the low end.

6          And I also wanted to just indicate on his behalf that

7     he didn't speak today.  He elected not to speak, but he did

8     indicate what he really wants from the Court is justice.

9          He doesn't -- he's not asking for any sympathy.  He

10     didn't want to put forth anything.  That's just the kind of guy

11     he is.  That's the individual that he is.  He does not want or

12     is not asking for any mercy or sympathy in terms of sentencing.

13          He just said he simply wanted justice.  I presumed he

14     would say that this morning, but he decided not to so I thought

15     I would say it on his behalf.  Submitted.

16          THE COURT:  All right.

17          Government wish to be heard?

18          MR. PENNEKAMP:  Your Honor, Mr. Lee indicated to me

19     that the government's preference would be that he get an

20     18-month sentence rather than a time-served sentence.  It may

21     be the case that he is approving 18 months, but our preference

22     would be that the B.O.P. be given the opportunity to actually

23     calculate that before he gets released.

24          THE COURT:  I understand.  You know, there's no doubt

25     that the defendant was -- the defendant was involved in

1   illegally selling firearms for profit.  He was unemployed at

2   the time.

3           He was living off his military pension, and so, you

4   know, it's -- it's really unknown how long he knew -- it's

5   unknown how long he actually knew Markinson, but it appears

6   that as probation correctly points out, all aspects of his

7   conduct are captured in the guideline computations except for

8   the firearm, the parts and what is it, an M-80 like device that

9   was found during the search of the defendant's residence.

10          You know, I think it -- it is also captioned in the

11  probation report that this is defendant's first felony

12  conviction.

13          He does have -- and it speaks to, you know, what

14  Mr. Leras is saying, and what you are saying about his alcohol

15  problem.  He has three prior alcohol-related convictions, and

16  two convictions for carrying a switchblade.  All are

17  misdemeanors.  They were all misdemeanors.

18          He also has a couple of misdemeanor battery arrests as

19  well, and while on supervised or pretrial supervision, the

20  defendant was driving under the influence of alcohol and hit

21  another vehicle and fled the scene.

22          You know, and I think, you know, his problems with

23  alcohol, you know, may be exacerbated or increased by his

24  service in the military.  It appears as though after leaving

25  the military, the defendant had a hard time adjusting to a life

1  outside the military.

2        We hear that enough to know in the first instance that

3  it's real and the second instance to know that it does wreak

4  havoc with people like -- like the defendant with their lives,

5  and we understand that.

6        He has -- as probation correctly points out --

7  posttraumatic stress disorder.  It's affected his ability to

8  find a job.  And what does he do?  He self-medicates with

9  alcohol and marijuana.

10        And because of the posttraumatic stress disorder, and

11  I see it -- I see it, you know, enough over the years, it

12  creates anxiety, anger, sort of a hair-trigger type of response

13  to most situations.

14        And, you know, and I'll say this, you know, it does

15  appear that, Mr. Wray, that you tried to address these issues.

16  I know you were involved with Veteran's Affairs, correct?

17        THE DEFENDANT:   Yes, sir.

18        THE COURT:   I know you tried to -- you tried to

19  address these concerns.  I know you also were participating in

20  driving under the influence courses and then ended up picking

21  up a DUI charge while you were doing that.

22        So, you know, I don't know that -- you know, the thing

23  is, it would be nice if the guideline calculations captured

24  everything that we get here in court about a person.

25        We have these cases, like the cases that preceded this

1    one, where a person has significant mental health issues and

2    the guidelines are -- they are just guidelines and then at some

3    point I imagine what they sort of expect is that the judge

4    steps in and comes up with something which the Court feels is

5    just.

6         You know, I really try to want to fashion something

7    that, you know, really helps him, but helps the public and

8    helps him not reoffend.  I think DUIs are, you know, one of

9    those offenses that just has the potential to wreak havoc in

10   people's lives, because when you drive under the influence of

11   alcohol, and you don't have your, you know, mental faculties

12   available to you, you know, and there's people in the public,

13   I've seen it happen.  It just can end in catastrophe.  Not only

14   for members of the public, but also for someone behind the

15   wheel of a car.

16        You know, we put all of these things in place, but

17   what I think, Mr. Wray, you are going to have to continue to

18   do -- you started off getting some help, and I think you kind

19   of fell off.  I think sometimes what happens is I understand,

20   you know, you get anxiety and things start to get a little bit

21   tight, but what you are going to have to try to do to stay out

22   of places like this, is you are going to have to stay in a

23   program that's really going to help you deal with the anxiety,

24   with nervousness and the anger.

25        I think you understand what I am saying, because

1    obviously you feel it, and I know you do feel it, but I want

2    you to try to understand that you are going to have to do that

3    and it may be for a while.  Do you understand that?

4              THE DEFENDANT:  Yes, I do.

5              THE COURT:  That's what I want you to do, because

6    quite frankly, I think that in looking at your whole history we

7    of course see the things that brought you before the Court, and

8    they continue to get you in trouble with the Court.

9              But I want you to recognize that we also recognize

10   that some of your problems were exacerbated by the fact that

11   you served this country admirably in the military.

12             We recognize that.  I want you to understand that,

13   okay.  I know it's hard to adjust to just kind of being out and

14   living with the things that you have to live with, but you are

15   going to have to really try to let people help you; do you

16   understand what I'm saying?

17             THE DEFENDANT:  I do.

18             THE COURT:  Do you have any questions about what I'm

19   saying?

20             THE DEFENDANT:  Not at this time.

21             THE COURT:  All right.  Because the one thing I -- I

22   don't want to wake up one morning and see something

23   catastrophic has happened to you or happened to a member of the

24   public because of something you did, okay.

25             And I want you to always recognize, you know, when you

1    get to those points in your life, you are going to have to

2    reach out.  You have to reach out.  Do you understand?

3              THE DEFENDANT:  I do.

4              THE COURT:  And people understand.  They understand,

5    and I think you did.  You reached out before, and I want you to

6    try to do it again.

7              Do you have any questions?

8              THE DEFENDANT:  Not at this time.

9              THE COURT:  Anything, Mr. Leras?

10             MR. LERAS:  No, thank you, your Honor.

11             THE COURT:  Anything further, Mr. Pennekamp?

12             MR. PENNEKAMP:  No, your Honor.

13             THE COURT:  All right.  It is the judgment and

14   sentence of this Court, pursuant to the Sentencing Reform Act

15   of 1984, that the defendant, Rayshawn Wray, is hereby committed

16   to the custody of Bureau of Prisons and be imprisoned for a

17   term of time served.

18             The defendant shall pay a special settlement of $100.

19   Payment to begin immediately.  The Court does find that the

20   defendant does not have the ability to pay a fine, so

21   imposition of fine is hereby waived.

22             Upon release from imprisonment, the defendant shall be

23   placed on supervised release for a term of 36 months.  Within

24   72 hours of release from the custody of the Bureau of Prisons,

25   the defendant shall report in person to the probation office in

1    the district to which he is released.

2            While on supervised release, the defendant shall not

3    commit another federal, state, or local crime and shall not

4    illegally possess controlled substances.  The defendant shall

5    cooperate in the collection of DNA as directed by the probation

6    officer and shall comply with the standard conditions which

7    have been recommended by the United States Sentencing

8    Commission and adopted by this Court.

9            Further, the defendant shall refrain from any unlawful

10   use of a controlled substance.  The defendant shall submit to

11   one drug test within 15 days of release from imprisonment, and

12   at least two periodic drug tests thereafter, not to exceed four

13   drug tests per month.

14           The Court does adopt these special conditions

15   recommended by the probation officer on page 19 of the

16   presentence report, and imposes all of these listed as special

17   conditions.

18           The Court does find that this sentence is sufficient

19   to punish the defendant and to deter others from similar

20   criminal conduct, but is not longer than necessary to achieve

21   those stated goals, and therefore meets the requirements of 18

22   U.S.C. Section 3553(a).

23           Sir, you do have a right to appeal from your

24   conviction if you believe that your guilty plea was somehow

25   unlawful or involuntary or if there's some other defect in the

1    proceedings that was not waived by your plea.

2            You also have a statutory right to appeal your

3    sentence under certain circumstances, particularly if you think

4    the sentence is contrary to law.

5            A defendant may waive those rights as part of a plea

6    agreement, and you have entered into a plea agreement which

7    waives some or all of your rights to appeal the sentence

8    itself.  Such waivers are generally enforceable, but if you

9    believe a waiver is unenforceable, you can present that

10   argument to the appellate court.

11           With few exceptions, any notice of appeal must be

12   filed within 14 days of judgment being entered in your case.

13           If you cannot afford the costs of an appeal, you will

14   be permitted to proceed without the payment of costs. If you

15   cannot afford counsel for an appeal, one will be appointed to

16   represent you if you request it.  The Clerk of the Court will

17   prepare and file a notice of appeal on your behalf.

18           I'm just going to recommend he be incarcerated at a

19   facility in California with the understanding he's going to get

20   time served, and only insofar as his recommendation accords

21   with his security classification and space availability as

22   determined by the Bureau of Prisons.

23           Is there a motion to dismiss any remaining counts?

24           MR. PENNEKAMP:  Your Honor, Mr. Wray is only named in

25   Count 1, so no.

1          THE COURT:  All right.  Great.  Thank you very much.

2   Defendant shall remain in the custody of the United States

3   Marshall pending release.  That is the order.  Thank you very

4   much.

5          MR. PENNEKAMP:  Thank you, your Honor.

6          MR. LERAS:  Thank you, your Honor.

7          THE COURT:  This court stands in recess.  Thank you

8   very much.

9          Good luck, Mr. Wray.

10          (The proceedings adjourned at 11:30 a.m.)

11                           --oOo--

12   I certify that the foregoing is a correct transcript from the

13   record of proceedings in the above-entitled matter.

14                           /s/ Tiphanne G. Crowe

15                           _____
                             TIPHANNE G. CROWE
16                           CSR No. 10958

17

18

19

20

21

22

23

24

25